DAVID RAY *vs.* PETER FLETCHER.

A complaint against a mill-owner for increased compensation for flowing, under Rev. Sts. *c.* 116, § 33, must set forth a former judgment between the same parties, or their predecessors, fixing a sum to be paid for annual damages, and must demand an increase thereof; otherwise it will be treated as an original complaint.

Maintaining a mill-dam at a uniform height, for twenty consecutive years, without any claim made for damages therefor, gives the owner a prescriptive right to keep the water in his pond as high as it can be raised by such dam, although it be kept up more uniformly, and to a greater height, and for a longer portion of the year than it was during said twenty years.

A judgment recovered, under the mill acts, in 1810, by a land-owner against a mill-owner for past damages for flowing, but making no provision for future compensation, is not conclusive against a prescriptive right set up by a subsequent mill-owner, in 1851, to flow without paying compensation; although the plaintiff in the second complaint is successor to the plaintiff in the first suit: but such judgment is competent evidence for the jury, upon the question of such prescriptive right, subject to the direction of the court as to its effect and operation.

THIS was a complaint for flowing, under Rev. Sts. *c.* 116, filed December 6, 1851, which alleged "that Peter Fletcher of Stow, miller, has from the first day of August, in the year one thousand eight hundred and fifty, to the day of the date hereof, maintained a certain water-mill, and a dam to raise water for working it, upon and across a certain stream or brook, not navigable, in said Stow, and that by means of the maintenance of said water-mill and the building, alteration

and changing of said dam by said Fletcher, the following de-
scribed tract of land of the complainant, situate in said Stow
and bounded as follows : [The boundaries were not mate-
rial:] has been overflowed from said first day of August to
this date, to the damage of the complainant, as he says, the
sum of five hundred dollars, and is still overflowed by said
dam. Wherefore, the said David Ray prays, that a warrant
may issue for a jury to hear and determine the matter of this
complaint, and that such proceedings may be had as law and
justice may require."

The respondent pleaded the general issue, and also a right
to flow as he had done. At the trial at the bar of the court of
common pleas, September term, 1852, before *Merrick*, J., the
complainant introduced his deed of the land, and offered evi-
dence tending to show, that by a dam now kept up by the
respondent for the purpose of working his mill, said land o_
the complainant was flowed, and thereby damaged, and that
the water flowed higher, and covered more land than it had
ever done before, and that water remained upon it, at seasons
of the year when it never did before. And to show that he
was entitled to such increased damage, the complainant pro-
duced and offered in evidence an office copy of a judgment
in the supreme judicial court for this county, at the April
term, 1810, between Ezekiel Gates, whose land the complain-
ant now has, and Marshall Spring, who had erected a dam,
which the respondent now maintains and keeps up, which
judgment was in favor of the complainant's ancestor against
said Spring, for damages to the land by flowing. The com-
plainant thereupon claimed, that this judgment showed con-
clusively, in the absence of any deed or agreement about the
damages for flowing, that he was entitled to a warrant for a
sheriff's jury, and that the only question was, as to the addi-
tional damages, if any, to which he had a claim, to be deter-
mined by that jury. But the court ruled, that the judgment
could not be admitted for any such purpose. [The nature of
the judgment is sufficiently stated in the opinion of the court.`

The respondent offered evidence tending to show, that he
and those under whom he claimed, had flowed said land as

high, and no higher than it was now flowed, for more than twenty years last past, and had paid no damages for such flowing, and claimed a right by prescription thus to flow without the payment of damages. But the complainant asked the court to instruct the jury, that said judgment was an answer to any such claim, which the court declined to do, and ruled, that the right of the respondent was to keep up the water as high as it will be raised by a dam of the same height as the former dam, which he and those under whom he claims, kept up and maintained for a period of twenty years before the commencement of the injury complained of; that is, he had a right during the time in which the injury is alleged to have been committed, to keep up and maintain a dam of the same height as that, which he and those under whom he claims, kept up and maintained for twenty years before the commencement of the injury complained of, although the water may thereby be kept up more uniformly, and flooded to a greater height than by the former dam, and the land of the complainant be flooded for a longer period of the year than before. The jury found for the respondent. To these rulings the complainant excepted.

*B. F. Butler,* for the complainant. When a complaint is made for increase of damages, the only question is, as to the increase, as the statute provides for payment of damages " so long as the dam shall be kept up and maintained." Rev. Sts *c.* 116, § 22.

The judgment between privies was therefore evidence, as it shows, that the dam was kept up by the payment of damages, and that the land was injured thereby. *Adams* v. *Pearson,* 7 Pick. 341; *Johnson* v. *Kittridge,* 17 Mass. 76; *Vandusen* v. *Comstock,* 9 Mass. 203.

The judgment was only claimed to be evidence in the absence of any deed or agreement about the damages. Under this limitation the court rejected the evidence. To this complaint there is no limitation, the statute provides it, at any time, so long as the dam is kept up. Rev. Sts. *c.* 116, §§ 22, 23; *Staple* v. *Spring,* 10 Mass. 75.

The lapse of time, in the absence of a statute, could only

avail the respondent by raising the presumption of a grant. The judgment itself was evidence to rebut this. *Bolivar Manufacturing Co.* v. *Neponset Manufacturing Co.* 16 Pick. 241.

Further; the judgment was claimed to be conclusive evidence, only in absence of a grant presumed or actual. The judgment was evidence to rebut the respondent's claim of a prescriptive right, which could only be supported by forty years adverse usage. *Coolidge* v. *Learned,* 8 Pick. 504 ; *Arundel* v. *Mc Culloch,* 10 Mass. 70. It is claimed, that as this use of the water could not be prevented by the owner of the land, it was not so adverse, that twenty years' use would in this case authorize the presumption of a grant. Lapse of time could only limit the action for gross or annual damage, provided for in section 24. *Hathorn* v. *Stinson,* 3 Fairf. 183 1 Fairf. 224; *Nelson* v. *Butterfield,* 8 Shepl. 220 ; *Seidensparger* v. *Spear,* 5 Shepl. 123. The instruction of the court was erroneous in this, that the instruction was, that the respondent would have a right to keep up the new dam as high as those under whom he claimed had maintained and kept up the former dam for twenty years; without limiting the ruling, that such maintenance must not be permissive or by the payment of damages, but adverse and under a claim of right, yielded to without payment of damages.

The instruction further erred in this, that the rule given to the jury was, that the new dam might be kept up as high as the former one had been for twenty years ; although the complainant's land was more uniformly flooded thereby, to a greater height and for a longer period of the year, than before. Now, as a grant can only be presumed, or an easement acquired, from the adverse use of complainant's land, that grant or easement must be precisely limited by that use, and can give no more extended right than one so limited. It is not the dam we complain of, but the flowing of our land thereby ; and it is difficult for us to see, how the flowing of our land for twenty years by the respondent, one foot deep for six months in the year, can give him a right now to flow it two feet deep during the whole year ; whether he does it by means

of a dam of the same or a different height. This ruling is broader than that in *Cowell* v. *Thayer*, 5 Met. 253, and that, it is submitted, should be limited in this, that if the dam had leaked during the time of the prescription, so that a part of the land had not been flowed during that period, the mill-owner could not flow such part by heightening and narrowing his dam ; any more than if he had a bridle path by prescription over the same land, he could justify, upon the plea of " improvement," drawing a coach and four over it; because it was more convenient for his whole family to go at one time.

*J. G. Abbott*, for the respondent. 1. The mere fact that the owner of the land in question recovered judgment for damages for flowing, against the owner of the respondent's dam in 1810, was not conclusive upon the question of the prescriptive right to keep up the dam ; this judgment being merely for past damages, and not for future.

2. All the evidence bearing upon the prescriptive right applied to a time subsequent to the judgment in question; in 1810 undoubtedly the right did not exist, but the respondent claims it was acquired subsequently. *Atkins* v. *Bordman*, 20 Pick. 302; *Bolivar Manufacturing Co.* v. *Neponset Manufacturing Co.* 16 Pick. 241; *Barker* v. *Salmon*, 2 Met. 32 ; *Sumner* v. *Stevens*, 6 Met. 337 ; *Brown* v. *King*, 5 Met. 173 ; *Clapp* v. *Bromagham*, 9 Cowen, 530; *Fishar* v. *Prosser*, 1 Cowper, 219 ; *Giles* v. *Pratt*, 2 Hill, (S. C.) 439.

3. The recovery of judgment in 1810, showing that the right did not then exist, followed by more than twenty years of adverse possession, is strong evidence to show that the right was in fact acquired subsequently to that period.

4. If the recovery of judgment here was conclusive against the prescriptive right, then such a claim could always be defeated by showing that at some point of time before the commencement of the twenty years' adverse possession, the right did not exist.

5. The extent of the prescriptive right must be determined by the height of the dam, during the twenty years in question. Any other rule would be uncertain, and in practice impossible

to be applied. *Cowell* v. *Thayer*, 5 Met. 258 ; *Alder* v. *Savill*, 5 Taunt. 454.

6. The dam may be repaired and kept tighter, the business for which the water is used may be altered, so as not materially to affect the state of the water on the lands above, the seasons may vary, or from other causes the amount of water may be increased, so as to raise it higher above the dam at one time than another; still the right must be governed by the effective height of the dam. *Cowell* v. *Thayer*, 5 Mct. 253 ; *Luttrel's case*, 4 Co. 86 ; *Saunders* v. *Newman*, 1 Barn. & Ald. 258 ; *Johnson* v. *Rand*, 6 N. Hamp. 22 ; *Biglow* v. *Battle*, 15 Mass. 313 ; *Buddington* v. *Bradley*, 10 Conn. 213.

7. The prescriptive right gained is, to raise the water as high as a dam of a given height will do it. And of course the height to which the water is raised, the dam remaining the same, will depend on the repair of the dam, the kind of business for which the water is used, and the greater or less quantity of water running in the stream.

8. Any rule but the height of the dam could never be applied in practice. To take the height of the water on the land flowed would be utterly impossible; perhaps it would vary every day in the year, the dam always remaining the same; it would certainly vary widely at different seasons. And then perhaps for a succession of years it would average differently for the whole time, from the same number of years before or after, depending upon the greater or less yearly supply from rains.

9. The right would certainly be governed by the height of the dam, if the same dam is so constructed, that it is not calculated to produce a greater head of water than the old one, if properly kept in repair; and if from causes over which the mill-owner has no control, the same height would flow higher than formerly, he should not be liable.

SHAW, C. J. This was a complaint made to the court of common pleas, by the complainant, to recover damages of the respondent, occasioned by the flowing of the complainant's land in Stow, by the respondent's mill-dam, erected and main‑ tained over a brook there situated.

It was argued on the part of the complainant, as if the complaint in the present case were a process to obtain an increase of damages, and that the only question open was, whether the complainant was entitled to an increase of damages. But in looking at the complaint, it appears not to be a proceeding of that character. A complaint for an increase of damages, under Rev. Sts. *c.* 116, § 33, must set forth a former judgment between the same parties or their predecessors, fixing a sum to be paid for annual damages, by the mill-owner to the land-owner, and demanding an increase of the annual damages thus assessed. But no such judgment is set forth in this complaint, no such award of damages to be paid annually is suggested. And indeed, if we look at the judgment, between the predecessors of these parties in 1810, hereafter referred to, it will appear that no annual damages were awarded. The small sum given, and that by consent of parties, was for past damages. This proceeding, therefore, is to be treated as an original complaint, and the rules of law applied accordingly. If then, this was an original complaint, the court are all of opinion, that, if the respondent had kept up and maintained his dam, so as efficiently and substantially to raise the water to the same height, to which the present dam raises it, without payment of damages, it is evidence from which a presumption arises, that he has, by release, satisfaction, or otherwise, acquired a title so to continue and maintain his dam, as a legal right, without payment of damages. It is evidence from which the law draws an inference of a lost or non-appearing deed, release, receipt of payment of gross damages, or other legal act done, which will be a bar to any future claim of damages, for flowing to the same height, by means of the same dam.

Nor does the judgment of this court in 1810, which was offered in evidence by the complainant, have any tendency to rebut this legal presumption. It merely shows, that prior to 1810 the predecessor of the complainant, had sustained some damage, by the dam of the predecessor of the respondent. But there was ample time between 1810 and 1850, when this complaint was commenced for the legal presumption of pay-

ment of gross damages, or a release of damages, to arise, that term of time being now fixed at twenty years. And it does not appear, that any damages were paid or claimed, or any complaint filed, from the entry of that judgment to the commencement of the present process. Indeed, as mere matter of evidence, it would seem probable, that a final adjustment was made at the time that judgment was rendered. A sheriff's jury had been sent out by a warrant from the court of common pleas, who returned a verdict, which was not accepted by the court, but set aside. The right was then put in issue in the court of common pleas, tried at the bar of that court, and found in favor of the complainant, but no damages awarded. It was then brought into this court by appeal, and then, without trial, it was adjusted by compromise, by a judgment for a small sum by consent. If then, no new complaint was made, and no new claim for damages, it would seem to be strong evidence, either that the parties then agreed that that judgment, which embraced no provision for future damages, should be a final adjustment of the controversy, or that some other agreement was made, or act done, by which all claim to future damages should be released. But whether it was so or not, the lapse of twenty years next before this complaint brought, without payment or claim of damages, does raise a presumption of a grant or release, which is a good bar to such a complaint.

It appears to this court, that the directions given in the case by the court of common pleas, were correct and accurate It appears by the exceptions, that the respondent offered evidence to show, that he and those, under whom he claimed, had flowed the said land as high and no higher than it was flowed, for more than twenty years last past, and had paid no damages for such flowing, and claimed a right thus to flow, without the payment of damages, by prescription. But the complainant asked the court, among other things, to instruct the jury, that said judgment was an answer to any such claim, which the court declined, but ruled that the right of the respondent is, to keep up the water as high as it will be raised by a dam of the same height as the former dam,

which he and those under whom he claims, kept up and maintained for a period of twenty years, before the commencement of the flowing complained of : that is, that he had a right, during the time, in which the injury is alleged to have been committed, to keep up and maintain a dam, of the same height, as that which he and those under whom he claims, kept up and maintained for twenty years before the commencement of the injury complained of, although the water may thereby be kept up more uniformly and flooded to a greater height, than by the former dam, and the land of the complainant be flooded for a longer period of the year, than before.   This instruction was substantially in conformity with the rule laid down in *Cowell* v. *Thayer*, 5 Met. 253, and the court are of opinion, that the rule was rightly laid down in that case, and confirm it.   The case of *Cowell* v. *Thayer* may require some slight modification in particular expressions, to avoid being misunderstood, but we think it is substantially correct.   It is not the actual height of the dam, which will regulate the prescriptive right of the party holding it, but its efficient height, according to its structure and operation, to maintain the height of the water, when in repair, and in good order ; and although the water actually raised by it, may to some extent vary from one season, or one year, to another, owing to the tightness of the dam, the mode of using the water, the different seasons, as being dry or wet, and the like, yet these considerations are too variable and uncertain, to be adopted or relied on, as the basis of a right acquired by grant or prescription.   We think, therefore, the efficient height of the dam, in its ordinary action and operation, measures and limits the claim of the mill-owner, to raise and appropriate the mill power of the stream; and the adverse, continued, peaceable, and uninterrupted use and enjoyment of the privilege, according to such claim, is evidence of the acquiescence of all other riparian proprietors, who would have a right to question and contest such claim, and, therefore, constitute that right in the stream by prescription, which would be the result of a grant from all such other proprietors in the stream.

Ray *v.* Fletcher.

Being thus of opinion, that the directions were correct in matter of law, the court would have felt bound to overrule the exceptions, and render judgment on the verdict, but for one consideration. It appears by the exceptions, that at an early stage of the trial, the complainant produced and offered in evidence, an office copy of a judgment in the supreme judicial court for this county, April term, 1850, between Ezekiel Gates, whose land the complainant has, and Marshall Spring, who had erected a dam which the respondent now maintains and keeps up, in favor of the complainant's ancestor, against said Spring, for damages to the land by flowing. The complainant offered it for a special purpose, and the court ruled that it could not be admitted for any such purpose. As we understand the exceptions, the evidence thus offered was absolutely rejected, and not admitted for any purpose. Now, as the copy was competent evidence of the record of the judgment, and as the judgment was between parties to whom these parties respectively were privy in estate, the judgment was competent evidence to go to the jury; the effect and operation of it to be subject, of course, to comment and direction by the court in point of law. For this reason, the court are of opinion, that the verdict must be set aside, and a new trial had in the court of common pleas. At the same time it is proper to add, that unless a very different case can be made on another trial, we should be of opinion that a verdict for the respondent would be in conformity with the rights of the parties. *Verdict set aside.*